**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TYRONE M. DIXON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 17-00538-B** |
| | * | |
| **NANCY BERRYHILL,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Tyrone M. Dixon (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On October 12, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 12). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 13). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedure History**[1]

Plaintiff protectively filed his application for benefits on
July 6, 2015, alleging disability beginning February 5, 2015, based
on hearing loss, a right knee problem, and high cholesterol. (Doc.
8 at 91, 180). Plaintiff's application was denied and, upon timely
request, he was granted an administrative hearing before
Administrative Law Judge Marni R. McCaghren (hereinafter "ALJ") on
February 8, 2017. (Id. at 61). Plaintiff attended the hearing
with his counsel and provided testimony related to his claims.
(Id. at 61, 65). A vocational expert also appeared at the hearing
and provided testimony. (Id. at 84). On March 6, 2017, the ALJ
issued an unfavorable decision finding that Plaintiff is not
disabled. (Id. at 42). The Appeals Council denied Plaintiff's
request for review on November 9, 2017. (Id. at 5). Therefore,
the ALJ's decision dated March 6, 2017, became the final decision
of the Commissioner.

Having exhausted his administrative remedies, Plaintiff
timely filed the present civil action. (Doc. 1). Oral argument
was conducted on November 19, 2018 (Doc. 19), and the parties agree
that this case is now ripe for judicial review and is properly
before this Court pursuant to 42 U.S.C. §§ 405(g).

---

[1] The Court's citations to the transcript in this order refer to
the pagination assigned in CM/ECF.

## II. Issues on Appeal

1. **Whether the ALJ reversibly erred by giving little weight to the opinion of Plaintiff's treating psychologist, Susan Rhodes, Ph.D.?**

2. **Whether the Appeals Council reversibly erred in finding that a report from a psychological evaluation performed after the ALJ's decision was not chronologically relevant to the determination of whether Plaintiff was disabled on or before the date of the ALJ's decision?**

## III. Factual Background

Plaintiff was born on January 3, 1970, and was forty-seven years of age at the time of his administrative hearing on February 8, 2017. (Doc. 8 at 65). Plaintiff has a twelfth-grade education and can read and write. (Id. at 66). Plaintiff last worked as a heavy equipment operator in February 2015. (Id. at 67). Plaintiff's employment as a heavy equipment operator ended when he declined his employer's request to switch to a different position within the company because the new job "would keep [him] in constant pain." (Id. at 67-68, 367). Prior to his employment as a heavy equipment operator, Plaintiff worked jobs as a truck driver and shipyard helper. (Id. at 69-71, 84).

Plaintiff was in the U.S. Army from 1988 to 1991 and served in a tank battalion during the First Gulf War. (Id. at 160, 465). He received an honorable discharge. (Id. at 465). In 2014, Plaintiff was awarded VA disability benefits with a rating of 50% for service-connected post-traumatic stress disorder ("PTSD").

(Id. at 23). Plaintiff's rating for PTSD was increased to 100% effective April 7, 2017, after the Department of Veterans Affairs determined that Plaintiff's PTSD had worsened. (Id. at 13, 23).

At his hearing, Plaintiff testified that he is unable to work because he has difficulty concentrating as a result of his PTSD and because of ongoing pain and other problems involving his surgically-repaired right knee. (Id. at 71-74). Plaintiff receives psychological therapy at the VA, regularly attends group PTSD sessions, and has been prescribed various medications for PTSD-related symptoms, including anxiety, depression, and nightmares. (Id. at 26, 896). Plaintiff was diagnosed with severe bone-on-bone right knee medial compartment arthritis. (Id. at 328). He underwent a right knee arthroscopy with medial meniscectomy, medial femoral condyle microfracture, and right high tibial osteotomy on October 13, 2015, and his right knee was also treated by physical therapy and medications. (Id. at 471). Plaintiff was also diagnosed with bilateral hearing loss and tinnitus, but he received hearing aids in July 2015 which allow him to hear well. (Id. at 445-46).

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards

4

were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.

1990). A court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner.

Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The

Commissioner's findings of fact must be affirmed if they are based

upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235

(11th Cir. 1991). "Substantial evidence is more than a scintilla,

but less than a preponderance" and consists of "such relevant

evidence as a reasonable person would accept as adequate to support

a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th

Cir. 1983). In determining whether substantial evidence exists,

a reviewing court must consider the record as a whole, taking into

account evidence both favorable and unfavorable to the

Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th

Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS

10163, at *4 (S.D. Ala. June 14, 1999).

## V.   Statutory and Regulatory Framework

An individual who applies for Social Security disability

benefits must prove his or her disability. 20 C.F.R. § 404.1512.

Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically

---

[2] This Court's review of the Commissioner's application of legal
principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his or her disability. 20 C.F.R. §§ 404.1520.

The claimant must first prove that he or she is not engaged in substantial gainful activity. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam). The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. Id. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. Id. If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four. Id. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his or her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work. Carpenter,

614 F. App'x at 486.

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. Discussion

### A. Substantial evidence supports the ALJ's assignment of "little weight" to the opinions of Plaintiff's treating psychologist.

Plaintiff argues that the ALJ erred in giving little weight to the opinions of Plaintiff's treating psychologist at the VA, Dr. Susan K. Rhodes, Ph.D., as to Plaintiff's mental functional limitations. (Doc. 9 at 2). Plaintiff complains that the ALJ, at times, referred to Dr. Rhodes as "Ms. Rhodes" in the decision and argues that the ALJ failed to discuss Dr. Rhodes' specialization as a psychologist and Plaintiff's "long-term treatment

relationship" with her. (Id. at 4). Defendant counters that the ALJ explained her reasoning for according little weight to the opinions of Dr. Rhodes and that substantial evidence supports the ALJ's assignment of weight to the expert opinions in this case. (Doc. 10 at 6-8). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

The ALJ found that Plaintiff has the severe impairments of hearing loss, right knee osteoarthritis status post high tibial osteotomy, PTSD, depression, and history of alcohol use disorder. (Doc. 8 at 47). The ALJ found, however, that Plaintiff's impairments, when considered individually and in combination, did not meet, medically equal, or functionally equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). (Id.). The ALJ further found that Plaintiff has the RFC to perform a reduced range of sedentary work with the following additional limitations: Plaintiff can lift or carry ten pounds occasionally; he can stand or walk for two hours in an eight-hour workday and sit for six hours with customary breaks; he cannot push or pull leg controls; he cannot climb ladders, ropes, or scaffolds; he cannot kneel, crawl, or crouch; he cannot climb ramps or stairs except as needed to enter or exit the workplace; he cannot work at unprotected heights, operate hazardous moving equipment, drive, or work around very loud noise; he can perform simple routine tasks; and he cannot

interact with the public. (Id. at 49). Based upon the testimony
of the vocational expert, the ALJ concluded that Plaintiff is not
able to perform his past relevant work, but he can perform other
work such as surveillance system monitor, bonder, and nut sorter.
(Id. at 54-55). Thus, the ALJ found that Plaintiff is not
disabled. (Id. at 56).

As part of the disability determination process, the ALJ is
tasked with weighing the opinions and findings of treating,
examining, and non-examining physicians. In reaching a decision,
the ALJ must specify the weight given to different medical opinions
and the reasons for doing so. See Winschel v. Comm'r of Soc. Sec.,
631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is
reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS
12010, at *4, 2009 WL 413541, at *1 (M.D. Fla. Feb. 18, 2009).

In the case *sub judice*, the ALJ weighed the opinions of
several physicians. Plaintiff takes issue only with the ALJ's
assignment of "little weight" to the opinions offered by
Plaintiff's treating psychologist, Dr. Rhodes, in a Mental RFC
Questionnaire completed less than a month before Plaintiff's
administrative hearing. Having reviewed the evidence at length,
the Court is satisfied that the ALJ's assignment of "little weight"
to the opinions set forth by Dr. Rhodes in the questionnaire is
supported by substantial evidence.

On January 17, 2017, Dr. Rhodes completed a Mental RFC

Questionnaire, in which she opined that Plaintiff has mild restriction of activities of daily living and moderate difficulty in maintaining social functioning. (Doc. 8 at 1065). In the questionnaire, Dr. Rhodes opined that Plaintiff would often have deficiencies in concentration, persistence, or pace resulting in failure to timely and appropriately complete tasks. (Id.). She also opined that Plaintiff had repeated expected episodes of decompensation in work or work-like settings which would cause him to withdraw from the situation or experience exacerbation of signs and symptoms for a period lasting at least two weeks. (Id.). Dr. Rhodes opined that Plaintiff has moderate limitations of his abilities to understand, carry out, and remember instructions and to respond appropriately to supervision, co-workers, and customary work pressures. (Id. at 1065-66). She further opined that Plaintiff has mild limitations of his abilities to perform simple or repetitive tasks or complete work-related activities in a normal workday or workweek. (Id. at 1066). Dr. Rhodes stated that Plaintiff's limitations could be expected to last for at least twelve months. (Id.). Although she noted that her first contact with Plaintiff was March 2016, Dr. Rhodes wrote that his problem dated "back to Desert Storm – 1990." (Id.). Finally, Dr. Rhodes commented: "Hyperarousal symptoms of PTSD interfere with attention, concentration and memory and may negatively impact relationships with supervisors and coworkers. Anger and

reactivity are likely." (Id.).

When weighing the opinions of a treating physician, the ALJ must give that physician's opinions "substantial weight" unless "good cause" exists for not doing so. Costigan v. Comm'r, Soc. Sec. Admin., 603 F. App'x 783, 788 (11th Cir. 2015) (per curiam) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam)). Good cause to discredit the testimony of any medical source exists when the testimony is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, at *8, 2012 WL 3155570, at *3 (M.D. Ala. Aug. 3, 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock, 764 F.2d at 835 (citations omitted); Adamo v. Comm'r of Soc. Sec., 365 F. App'x 209, 212 (11th Cir. 2010) (per curiam) ("The ALJ may reject any medical opinion if the evidence supports a contrary finding.").

In her discussion of Plaintiff's alleged mental impairments as they relate to Plaintiff's RFC, the ALJ noted that Plaintiff did not specifically allege disability based on a mental impairment in his disability report, but that Plaintiff testified he is unable

to work primarily because of difficulties concentrating and paying attention secondary to PTSD. (Doc. 8 at 51). The ALJ noted that Plaintiff was previously seen at the VA in 2006 for PTSD treatment but, according to the records, he did not return for PTSD treatment until ten years later in 2016. (Id.). Plaintiff testified that this gap was due to a threatening remark he made to one of his providers in 2006 that left him unable to obtain mental health treatment by other providers, but the ALJ stated that there is no evidence of this in the record. (Id. at 52, 81). The ALJ noted that Plaintiff had been seeing a psychiatrist, Dr. Gregory W. Cummings, since March 2016 to manage Plaintiff's medication for PTSD and depression, and that Plaintiff was currently prescribed Remeron, Buspar, and Prazosin. (Id. at 52). The ALJ noted that Plaintiff consistently denied any adverse side effects to the medication, that Plaintiff had improved with medication, that Plaintiff's mental status examinations documented in Dr. Cummings' treatment records are generally unremarkable, that there is no objective evidence of loss of concentration or attention in the records, and that Plaintiff's primary complaints were of difficulty sleeping. (Id.). The ALJ further noted that Plaintiff began seeing Dr. Rhodes in March 2016 and that Plaintiff was "participating in individual and group therapy with Ms. Rhodes, a psychologist." (Id.). The ALJ stated that Plaintiff's "mental status exams, as documented in Ms. Rhodes' treatment records, are

also likewise generally within normal limits. His mood is typically just mildly depressed and irritable with a congruent affect but otherwise normal. There is no objective evidence in Ms. Rhodes' treatment records of any loss of concentration or attention." (Id.).

After discussing Plaintiff's treatment with Dr. Cummings and Dr. Rhodes, the ALJ stated that she accorded "little weight to the opinion of Ms. Rhodes" set forth in the Mental RFC Questionnaire because it was not supported by the record. (Id.). The ALJ observed that neither Dr. Rhodes' nor Dr. Cummings' treatment records document any objective loss of concentration or attention. (Id.). Although Plaintiff reported not wanting to be around others because of his PTSD, the ALJ stated that Plaintiff was regularly described in the records as calm and pleasant and interacting well with others. (Id.). The ALJ noted that Plaintiff regularly attended church, assisted in caring for his grandparents, took a friend to dialysis three times a week, spent time with "a buddy," and coached a youth football team, "all of which require interaction with others." (Id.). The ALJ also found Dr. Rhodes' opinion concerning Plaintiff's repeated expected episodes of decompensation unsupported by the record, "which documents largely normal mental status exams and no evidence that the claimant has required emergency room treatment for any mental impairment or inpatient psychiatric treatment." (Id.).

The record shows that the ALJ considered Dr. Rhodes' opinions at length and determined that Dr. Rhodes' assessment of Plaintiff's mental functional limitations was entitled to little weight because her opinions in the questionnaire were unsupported by and inconsistent with Plaintiff's treatment records and Plaintiff's activities of daily living. The Court agrees.

As stated, Dr. Rhodes opined that Plaintiff would often have deficiencies in concentration, persistence, or pace resulting in failure to timely and appropriately complete tasks, and that Plaintiff's ability to respond appropriately to supervision, co-workers, and ordinary work pressures is moderately impaired. Yet, Plaintiff's VA treatment records reflect no loss of concentration or attention. On the contrary, Dr. Rhodes herself stated that Plaintiff's "[a]ttention, concentration and memory appear adequate." (See id. at 994). Dr. Cummings consistently found Plaintiff to be alert and oriented in all spheres and able to establish rapport, with adequate eye contact, fluent and normal speech, logical and goal-directed thought processes, intact cognition, good insight, and adequate judgment and impulse control. (See id. at 894, 916, 945, 965, 974-75, 979-80, 988). Likewise, Dr. Rhodes noted that Plaintiff's eye contact was appropriate, he was alert and fully oriented, his thoughts were logical and goal-directed, his intelligence level was estimated to be average, and his judgment and insight are fair. (See id. at

907, 909, 926, 940, 942, 969, 984, 993-94).

In the questionnaire, Dr. Rhodes also opined that Plaintiff would be expected to have repeated episodes of decompensation in work or work-like settings. However, Plaintiff's treatment records and demonstrated activities of daily living do not support this assertion. The records document no such past episodes of decompensation. Instead, the VA records indicate that, after a ten-year gap in mental health treatment, Plaintiff responded well to therapy and medication, and Plaintiff's mental status was generally noted as normal. (See id. at 892, 894, 906-07, 909, 915-16, 926, 928-29, 931, 940, 942-43, 945, 957, 963, 965, 969, 974-75, 978-80, 983, 988, 993-94). The records consistently reflect that Plaintiff's primary complaints were nightmares and difficulty sleeping. (See id. at 892-93, 915, 943, 954, 969, 973, 983, 985, 992). Moreover, medications prescribed by Dr. Cummings appear to have reduced Plaintiff's bouts of depression and anxiety, although they did not eliminate them. After Dr. Cummings prescribed Prazosin to alleviate Plaintiff's nightmares, Plaintiff consistently reported "some improvement" as a result of his medications, although he continued to complain of intermittent nightmares and insomnia. (See id. at 892-93, 915, 943, 963, 969, 977). Plaintiff consistently denied side effects from his medication, and Dr. Cummings was able to twice increase the dosage of Prazosin to combat Plaintiff's nightmares. (See id. at 893,

896, 915, 918). As the ALJ noted, Plaintiff's mental status examinations documented in the treatment records were generally unremarkable, although his mood often had a mildly depressed affect. Yet, even Plaintiff's mood showed improvement as his treatment progressed. On both October 17, 2016, and December 19, 2016, Dr. Cummings noted that Plaintiff's mood "was 'good' with a less depressed Affect." (Id. at 894, 916). A primary care note dated June 30, 2016, stated: "Veteran report [sic] feeling better. . . . He voices no increase of anxiety. He denies suicidal or homicidal thoughts, plan or intent. Veteran voices no psychiatric concern at this time. He reports taking medication as prescribed with no side effects and good result." (Id. at 957).

As the ALJ noted, despite reporting that he does not want to be around others because of his PTSD, Plaintiff is routinely described in the records as calm, pleasant, and interacting normally with others. (See id. at 456, 763, 784). He participated actively and well in PTSD group discussions. (See id. at 806-07, 812, 818, 821-22). As the ALJ alluded to, the notes from Dr. Rhodes' initial session with Plaintiff in March 2016 state that Plaintiff spent his time taking a friend to dialysis three times per week and that Plaintiff "'hangs out with a buddy' and goes fishing in his spare time." (Id. at 993). The record reflects that Plaintiff coached a youth football team throughout an entire season from approximately August 2016 until November 2016 and found

coaching very rewarding.  (See id. at 909, 942).

In August 2016, Plaintiff's wife stated that she had encouraged Plaintiff to get out of the house but that he was uncomfortable going out, that Plaintiff sometimes cooked for her, and that she had recently given Plaintiff a puppy, which had helped give him more to do.  (Id. at 942).  Dr. Rhodes' notes from November 2016 reflect that Plaintiff was bored at home watching TV most days and that he visited his grandparents three times a week.  (Id. at 909).  Her notes from a December 2016 session reflect that Plaintiff was busy taking care of his grandparents and was checking on them almost daily.  (Id. at 906).  The records from a mental health compensation and pension examination dated April 20, 2015, reflect that Plaintiff "gets along well" with the other members of his church "most of the time."  (Id. at 366).  The records of that examination reflect that Plaintiff cooks for his grandparents, helps them with groceries, and takes them to doctors' appointments. (Id.).  Those examination records further reflect that Plaintiff uses his smartphone to access the internet, takes care of the household finances and pays bills, cleans the kitchen, helps with laundry when asked, and "does the vacuuming, sweeping, and mopping."  (Id. at 366-67).

As the ALJ found, the mental functional limitations for Plaintiff, as opined by Dr. Rhodes, are unsupported by and, indeed, inconsistent with the substantial medical evidence and the

evidence of Plaintiff's activities of daily living outlined above. Contrary to Plaintiff's argument, the ALJ clearly recognized and discussed Dr. Rhodes' role as Plaintiff's treating psychologist. It is apparent from the ALJ's discussion that she thoroughly reviewed Plaintiff's treatment and examination records and that she clearly articulated adequate reasons for giving little weight to Dr. Rhodes' opinions concerning Plaintiff's mental functional limitations. Accordingly, the ALJ did not err in assigning little weight to Dr. Rhodes' opinions, and Plaintiff's claim must fail.

**B.    The Appeals Council did not reversibly err in denying Plaintiff's request for review.**

Plaintiff next argues that the Appeals Council erred in finding that a report prepared after the date of the ALJ's decision by an examining psychologist was not chronologically relevant and declining to grant review of the ALJ's decision based on the information contained in the report. (Doc. 9 at 2, 4-6). After the ALJ's decision, Plaintiff's counsel referred Plaintiff to psychologist Kendra LaConsay, Psy.D., for a psychological evaluation to obtain an opinion as to the severity of Plaintiff's PTSD. (See Doc. 8 at 25). Dr. LaConsay examined Plaintiff on March 28, 2017, and her report was signed on April 7, 2017. (Id. at 25, 28). Plaintiff submitted to the Appeals Council Dr. LaConsay's examination report, which included a psychological evaluation, Mental RFC Questionnaire, and Review PTSD Disability

Benefits Questionnaire. (Id. at 6, 25-36). In its denial letter, the Appeals Council stated, in relevant part:

> You submitted a psychological evaluation from Kendra LaConsay, Psy.D., dated March 28, 2017 (12 pages) . . . . The [ALJ] decided your case through March 6, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 6, 2017.

(Id. at 6). Having carefully reviewed the record, the Court finds that there is not a reasonable probability that Dr. LaConsay's report would have changed the administrative result in this case. Therefore, the Appeals Council did not reversibly err by failing to properly consider Dr. LaConsay's report.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of [the] administrative process." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council must review a case if, *inter alia*, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).[3] "New evidence must not be cumulative of other

---

[3]    The regulation governing Appeals Council review, 20 C.F.R. § 404.970, was amended effective January 17, 2017, applicable as of May 1, 2017. See 81 FR 90987-01. Although not cited by Plaintiff, the Appeals Council applied the revised regulation in this case. See Collins v. Berryhill, 2018 U.S. Dist. LEXIS 151687, at *39

evidence in the record." Beavers v. Soc. Sec. Admin., Comm'r, 601 F. App'x 818, 821 (11th Cir. 2015) (per curiam). The Eleventh Circuit has found that evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result[.]" Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986). However, the revised version of 20 C.F.R. § 404.970 incorporates a slightly stricter standard for materiality, i.e., that the additional evidence is material if there is a reasonable *probability* that it would change the outcome of the decision. See Steven D. A. v. Comm'r of Soc. Sec., 2018 U.S. Dist. LEXIS 119178, at *17-18, 2018 WL 3438856, at *7 (S.D. Ill. July 17, 2018). "New evidence is chronologically relevant if it relates to the period on or before the date of the [ALJ's] hearing decision." Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309 (11th Cir. 2018) (per curiam) (citations and internal quotation marks omitted). Failure by the Appeals Council to consider new, material, and chronologically relevant evidence is legal error that may provide a basis for remand by a reviewing

n.4, 2018 WL 4232888, at *12 n.4 (E.D. Va. Aug. 20, 2018) ("Here, the Appeals Council denied Plaintiff's request for review on July 20, 2017, after the new regulation took effect. Thus, the new version of the regulation applies to Plaintiff's claims.") (internal citation omitted), report and recommendation adopted, 2018 U.S. Dist. LEXIS 151377, 2018 WL 4224854 (E.D. Va. Sept. 5, 2018).

court.  Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1321 (11th Cir. 2015).  Accordingly, a reviewing "court will determine in a de novo review whether the additional evidence that the claimant submitted to the Appeals Council was new, material and chronologically relevant, and thus, whether the Appeals Council's failure to consider it was legal error." Humphrey v. Berryhill, 2017 U.S. Dist. LEXIS 41924, at *39-40, 2017 WL 1090602, at *13 (N.D. Ala. Mar. 23, 2017).

In this case, Plaintiff properly submitted the report from Dr. LaConsay to the Appeals Council, as it was generated after the ALJ's decision dated March 6, 2017.  In the report, Dr. LaConsay stated that she administered the Beck Depression Inventory-II test, in which Plaintiff scored within the severe range, and the Trauma Symptom Inventory-2 test, which yielded a clinically elevated score.  (Doc. 8 at 27-28).  Dr. LaConsay opined that Plaintiff's "PTSD symptoms are extremely elevated and severely disruptive to his overall ability to function, as is his levels of depression and suicidality." (Id. at 28).  Dr. LaConsay diagnosed Plaintiff with PTSD; major depressive disorder, recurrent, severe; and alcohol use disorder in partial remission.  (Id.).

In the Mental RFC Questionnaire, Dr. LaConsay opined that Plaintiff would have marked limitations understanding, remembering, or applying information, adapting or managing himself, and performing simple tasks.  (Id. at 29-30).  Dr.

LaConsay opined that Plaintiff would have marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner. (Id. at 29). Dr. LaConsay opined that Plaintiff would have extreme difficulty interacting with others, responding appropriately to supervision, co-workers, or customary work pressures, and completing work-related activities in a normal workday or workweek. (Id. at 29-30). Dr. LaConsay stated that Plaintiff could be expected to have four or more episodes of decompensation in work or work-like settings which cause him to withdraw from that situation or experience exacerbation of signs and symptoms for a period lasting at least two weeks. (Id. at 29). In the Review PTSD Disability Benefits Questionnaire, Dr. LaConsay opined that Plaintiff has a total occupational and social impairment. (Id. at 32).

Dr. LaConsay's materials did not specifically state that her opinion related back to any date on or before the date of the ALJ's decision. However, in the Mental RFC Questionnaire, Dr. LaConsay answered "2003" in response to a question asking her to list "the earliest date that the description of symptoms and limitation [sic] in this questionnaire applies[.]" (Id. at 30). In addition, Dr. LaConsay listed "Records Review" as one of her methods of evaluation, although she did not provide any further detail as to which of Plaintiff's records she may have reviewed. (See id. at 27).

The Appeals Council considered Dr. LaConsay's report and made it part of the record but found that the report was not related to the period at issue and, therefore, does not impact the decision about whether Plaintiff was disabled on or before the date of the ALJ's decision.  (See id. at 6, 25-36).

In support of his argument, Plaintiff cites Washington, in which the Eleventh Circuit "recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant."  806 F.3d at 1322.  In Washington, the claimant submitted a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations to the Appeals Council, which was prepared seven months after the ALJ's decision.  Id. at 1319-20.  The Eleventh Circuit found the documents to be chronologically relevant because the claimant described his mental symptoms during the relevant period to the psychologist, the psychologist had reviewed the claimant's mental health treatment records from the relevant period, and there was no evidence of the claimant's mental decline since the ALJ's decision.  Id. at 1319, 1322-23 (limiting the court's holding to "the specific circumstances of this case").

In the case at bar, Dr. LaConsay stated that her description of Plaintiff's symptoms and limitations is applicable dating back to 2003.  (Doc. 8 at 30).  Although Dr. LaConsay did not specify which records she may have reviewed, she did indicate that she

reviewed Plaintiff's records, and the Court notes that most of Plaintiff's records pertaining to mental health treatment appear to be from the adjudicated period. It is arguable that Dr. LaConsay's opinions, which are drastically more severe than those of Plaintiff's treating mental healthcare providers just a few months earlier, suggest a steep recent decline in Plaintiff's mental status. However, there is no real evidence that Plaintiff experienced a mental decline between the time of the ALJ's decision and Dr. LaConsay's evaluation. Thus, the Court disagrees with the Appeals Council's statement that Dr. LaConsay's materials do not relate to the period in question. Accordingly, the Appeals Council erred in rejecting the report on the basis that it does not relate to the period at issue. However, errors which do not prejudice the claimant and which would not change the disability determination are harmless. See generally Battle v. Astrue, 243 F. App'x 514, 522 (11th Cir. 2007) (per curiam); Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam).

Even though Dr. LaConsay's examination report was chronologically relevant, it was not material evidence because there is no reasonable probability that the report would change the administrative outcome. LaConsay's opinions about the severity of Plaintiff's mental impairments and functional limitations are quite obviously inconsistent with the substantial evidence of record in this case. Further, the vast majority of

the information included in Dr. LaConsay's report is cumulative of the findings made by treating or examining doctors prior to the ALJ's decision, and therefore is not "new" evidence. See Beavers, 601 F. App'x at 821. Indeed, the only information in Dr. LaConsay's report that does not appear to be cumulative are the results of the Beck Depression Inventory-II and Trauma Symptom Inventory-2 tests administered during Dr. LaConsay's evaluation of Plaintiff. For these reasons, any error by the Appeals Council in its evaluation of the evidence submitted by Plaintiff after the ALJ's decision is harmless. See Clough v. Soc. Sec. Admin., Comm'r, 636 F. App'x 496, 498 (11th Cir. 2016) (per curiam) (finding Appeals Council's incorrect determination that physicians' evaluations were not chronologically relevant not to be reversible error because the evaluations did not provide new, noncumulative evidence); Hargress, 883 F.3d at 1310 ("Even if the 2015 physical capacities form could be considered chronologically relevant, it was not material evidence because there is no reasonable possibility that the new evidence would change the administrative result.").

It should be stressed that Dr. LaConsay's opinions concerning the severity of Plaintiff's PTSD, depression, and suicidality are based on a one-time examination performed at the request of Plaintiff's counsel. "The opinion of a one-time examining physician — or psychologist . . . — is not entitled to the same

25

deference" as that of a treating physician. <u>Petty v. Astrue</u>, 2010 U.S. Dist. LEXIS 24516, at *50, 2010 WL 989605, at *14 (N.D. Fla. Feb. 18, 2010) (citing <u>Crawford</u>, 363 F.3d at 1160). The evaluations of the severity of Plaintiff's PTSD, depression, and suicidality found in Dr. LaConsay's report are contradicted at nearly every turn by the substantial record evidence in this case, including the records of Plaintiff's treating providers. As documented in greater detail *supra*, the treatment records of Plaintiff's primary mental healthcare providers, Dr. Rhodes and Dr. Cummings, reflect generally unremarkable mental status examinations and mild depression. (<u>See</u> Doc. 8 at 894, 907, 909, 916, 926, 940, 942, 945, 965, 974-75, 979-80, 988, 993-94). The records of Dr. Rhodes and Dr. Cummings document improvement in Plaintiff's conditions and a positive response to therapy and medication by Plaintiff. (<u>See id.</u> at 892, 894, 906, 915-16, 926, 928-29, 931, 940, 943, 945, 957, 963-64, 969, 978, 983). In stark contrast to Dr. LaConsay's finding of elevated suicidality, the VA records consistently designate Plaintiff a low suicide risk. (<u>See id.</u> at 895, 907, 909, 917, 926, 940, 946, 957, 966, 968, 976, 981, 984, 994).

Dr. LaConsay's opinions that Plaintiff had marked to extreme impairments in work-related functioning are likewise inconsistent with the record evidence. Plaintiff's treating providers noted no concentration or attention deficiencies in their records, yet Dr.

LaConsay opined that Plaintiff would have marked deficiencies in concentration resulting in failure to timely and appropriately complete tasks. Dr. LaConsay stated that Plaintiff's ability to interact with others is extremely impaired. Yet the record shows that Plaintiff interacted normally and pleasantly with others and even assumed positions of responsibility, taking care of his grandparents, regularly transporting a friend to dialysis, and coaching a youth football team. (See id. at 26, 366, 456, 465, 763, 784, 906, 909, 942, 993). As noted previously, the records from Plaintiff's PTSD group therapy sessions demonstrate that Plaintiff was an active participant in the discussions. (See id. at 806-07, 812, 818, 821-22). During a mental examination on October 9, 2015, Plaintiff told Dr. Pamela M. Starkey that he got along with 90% of his co-workers and denied having any disciplinary writeups at his jobs. (Id. at 465). Even Dr. LaConsay observed that Plaintiff "was polite and friendly and rapport was easily established. He was cooperative with all tasks presented. He was alert, fully oriented and attentive for the purposes of this evaluation." (Id. at 26).

Dr. LaConsay opined that Plaintiff's ability to perform even simple tasks was markedly impaired. Yet the record shows that Plaintiff mows the grass, cares for his grandparents, provides transportation for others, cooks, cleans, cares for his puppy, and handles his household financial affairs. (See id. at 76-77, 366-

67, 993).  Dr. LaConsay's opinion that Plaintiff would have four or more expected episodes of decompensation in work or work-like settings has even less support than did Dr. Rhodes' opinion that Plaintiff would have three such episodes.  There is simply no credible evidence in the record that Plaintiff has previously experienced episodes of decompensation or that Plaintiff's conditions are severe enough to cause multiple episodes of decompensation in a work setting.  Nor is there any credible medical evidence that Plaintiff has a total occupational and social impairment as a result of his mental conditions.  On the contrary, Plaintiff testified that he stopped working because of alleged physical impairments.  (See id. at 67-68).

In sum, Dr. LaConsay's opinions regarding the severity of Plaintiff's mental impairments and functional limitations are inconsistent with the record evidence, including, *inter alia*, the medical records created during the relevant time period and submitted to the ALJ.  Thus, there is no reasonable probability that Dr. LaConsay's report would have changed the administrative outcome, so it was not material evidence.  Accordingly, the Appeals Council was not required to grant review of Plaintiff's case on the basis of Dr. LaConsay's report, and Plaintiff's claim is without merit.

**VII. Conclusion**

For the reasons set forth herein, and upon careful

consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED**.

       **DONE** this **27th** day of **March, 2019.**

                                                      **/s/ SONJA F. BIVINS**
                                          **UNITED STATES MAGISTRATE JUDGE**